IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| WILLIAM SHULAR, | ) | Case No. |
| *Plaintiff,* | ) ) ) | |
| v. | ) | Demand for Jury Trial |
| LG CHEM, LTD and LG CHEM AMERICA, INC. | ) ) ) | |
| *Defendants*. | ) ) ) | |

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

COMES NOW, Plaintiff, William Shular, by and through his attorneys of record, and for causes of action against the above-named Defendants complains, alleges, and states as follows:

## I.   PARTIES

1. Plaintiff William Shular was and is a resident of Prince Edward County, Virginia.

2. Defendant LG Chem America, Inc. ("LG Chem America") is a Delaware corporation with its principle place of business located in Atlanta, Fulton County, Georgia. At all times relevant hereto, LG Chem America was a distributor and/or seller of various LG products, including but not limited to lithium-ion batteries.

3. Defendant LG Chem Ltd. ("LG Korea") is a multi-national chemical-based company founded in Korea in 1947. It boasts of leading the global market with its manufacture and sale of lithium-ion batteries, such as the cylindrical 18650 batteries at issue in this case.

4. Defendant LG Chem America and Defendant LG Korea will collectively be referred to as the "LG Defendants."

5. LG Korea does not maintain any physical presence in the United States. It has a network of wholly owned subsidiaries in and throughout the United States that work together to sell various products nationwide.

6. LG Korea documents characterize the business activities of one such subsidiary, Defendant LG Chem America, as "sales and trading" of LG Korea's products in the United States.

7. Upon information and belief, LG Chem America is a wholly owned subsidiary of LG Korea, and has extensive operations in both Georgia and California.

8. LG Korea created LG Chem America for the specific purpose of "sales and trading" of LG Chem Korea products in the United States.

9. LG Korea and LG Chem America represent themselves as one and the same in the marketing of their products.

10. LG Korea ships lithium-ion batteries and other products directly into the United States from Korea, and LG Chem America - in its role as shipper and distributor- fulfills delivery and distribution of said items both in and throughout the United States. LG Chem America takes possession of lithium-ion batteries in the United States and systematically sells, ships, and/or distributes them throughout the United States, including Georgia.

11. LG Korea and LG Chem America have a yearly revenue of over $278 million attributable to batteries sold or imported into the United States and $2.4 billion worldwide.

12. LG Korea exercises pervasive and tight control over the sales and trading activities of its subsidiary, LG Chem America, and LG Chem America was created solely for the purpose of acting as an instrumentality for which LG Korea could sell and distribute its products, including batteries, in the United States.

13. LG Korea designed, manufactured, distributed, sold, and/or otherwise placed the subject battery that injured Plaintiff into the stream of commerce.

14. The instant case involves the explosion of a lithium ion battery and the subject battery, and other similar/identical 18650 lithium-ion batteries, was advertised, marketed, sold, distributed, and placed into the stream of commerce through the engagement of the LG Defendants and one or more distributors and/or retailers who sell and distribute LG products, including the subject battery and similar batteries to consumers.

15. The LG Defendants sell lithium-ion batteries to Chinese companies known to the LG Defendants to be distributors of e-cigarette and personal vaping products, including 18650 batteries.

16. The LG Defendants know the Chinese entities to whom they sell their products, including lithium-ion 18650 batteries, distribute said products to e-cigarette and vaping retailers, wholesalers, and distributors in the United States.

17. LG Chem America is registered to do business in only seventeen (17) states, it manages customer accounts, provides marketing support, provides technical support, and conducts external technology research, all on behalf of its corporate parent and product manufacturer, LG Korea.

## II. JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332; the Plaintiff and the Defendants are diverse and the amount in controversy exceeds $75,000.00

19. This Court has personal jurisdiction over Defendant LG Chem America, Inc. because it is headquartered in this district.

20. This Court has personal jurisdiction over Defendant LG Chem, Ltd. ("LG Korea" sometimes herein) because of its purposeful, continuous, and systematic contacts with Georgia entities and the Georgia market, including but not limited to Defendant LG Chem America, Inc., and because its products are sold in and throughout Georgia.

21. This Court is an appropriate venue for the cause of action because Defendant LG Chem America, Inc. is headquartered in this district.

## III. FACTS

**E-Cigarettes**

22. E-cigarettes, also known as e-cigs, vapes, vape pens, and mods (customizable, more powerful vaporizers) are battery operated devices that deliver nicotine through flavoring and other chemicals to users in the form of vapor instead of smoke.[1] They were first patented in 2003 and have been available for sale in the United States since 2007.[2]

---

[1] *See generally*, *Electronic Cigarettes*, National Institute on Drug Abuse, Rev. March 2018, available at https://www.drugabuse.gov/publications/drugfacts/electronic-cigarettes-e-cigarettes.

[2] McKenna, L., *Electronic Cigarette Fires and Explosions in the United States 2009-2016*, U.S. Fire administration, July 2017 available at https://www.usfa.fema.gov/downloads/pdf/publications/electronic_cigarettes.pdf

4

23.  E-cigarettes are designed to simulate the act of smoking traditional tobacco, allegedly with less of the toxic chemicals produced by the burning of tobacco leaves and other chemicals contained in traditional, combustible cigarettes.[3] E-cigarettes offer doses of nicotine with a vaporized solution, often referred to as "juice," "e-liquid," or "pods," providing a physical sensation similar to tobacco smoke.

24.  Generally, electronic cigarettes operate the same way regardless of the model in that they typically consist of at least three (3) component parts: a tank, a battery that works to heat the juices or e-liquid contained in the tank, and an atomizer that converts the liquid into vapor that the user inhales.

25.  E-cigarettes differ from traditional cigarettes in a critical way: the e-cigarette is battery-operated and uses a heating element to produce vapor, and the traditional cigarette has no electronic component. While both products may produce a similar physical sensation, e-cigarettes pose an additional danger - the battery-powered heating element, as well as the battery itself - that can and have caused explosions, fires, and serious injury.

26.  E-cigarettes are more dangerous than other products that contain lithium batteries because the e-cigarette is most often designed as a cylindrical device, requiring a lithium-ion battery of a similar shape. When the device malfunctions or fails, the battery can be shot out like a bullet or rocket.[4]

27.  At least two deaths have been reported in relation to an exploding e-cigarette.[5]

---

[3] *See generally, Electronic Cigarettes*, National Institute on Drug Abuse, Rev. March 2018, available at https://www.drugabuse.gov/publications/drugfacts/electronic-cigarettes-e-cigarettes.
[4] United States Fire Administration, *Electronic Cigarette Fires and Explosions*, October 2012, at p. 5.
[5] *See* https://www.washingtonpost.com/health/2019/02/05/vape-pen-kills-man-after-exploding-his-mouth/.

5


28. E-cigarettes have become increasingly popular. They have been marketed as smoking-cessation aids[6] and as a healthier alternative to traditional tobacco cigarettes. The selection of products has grown at an extremely rapid rate.[7]

29. Since their introduction into the United States, sales have risen dramatically from approximately $20 million in 2008 to $2.5 billion in 2012. Industry experts predict the e-cigarette industry will become an $85 billion business within a decade and surpass the tobacco industry.[8]

30. In January 2014, there were 466 brands of e-cigarettes and over 7,000 unique e-cigarette juice flavors available for sale.[9]

31. Until recently, e-cigarette marketing has been unfettered and unregulated. Whereas tobacco advertisements have been banned on radio and television for more than 40 years, no such restrictions have been instituted in the e-cigarette arena. Manufacturers, distributors, and sellers of e-cigarettes therefore reach a broader consumer base than the tobacco industry and have the freedom to utilize the same marketing tactics previously employed by big tobacco. Namely, to tout the supposed health benefits of their products absent scientific and medical data to support such claims; to portray e-cigarette smoking as a harmless pastime on TV, radio, and in print; capitalize on individuals already addicted to nicotine; and/or encourage nicotine newcomers (mainly youths and young adults) to pick up the habit.

---

[6] *Id.*
[7] Zhu, S. H., Sun, J. Y., Bonnevie, E., Cummins, S., Gamst, A., Yin, L., & Lee, M. (2014). Four hundred and sixty brands of e-cigarettes and counting: Implications for product regulation. Tobacco Control Act 2014, 23: iii3-iii9.
[8] Clarke, T., *Reports of E-Cigarette Injury Jump Amid Rising Popularity, United States Data Show*, Reuters.com, April 17, 2012.
[9] Zhu, S. H., Sun, J. Y., Bonnevie, E., Cummins, S., Gamst, A., Yin, L., & Lee, M. (2014). Four hundred and sixty brands of e-cigarettes and counting: Implications for product regulation. Tobacco Control Act 2014, 23: iii3-iii9.

32. Despite advertisements that represent e-cigarettes as a healthier alternative to traditional cigarettes, various articles have concluded that the long-lasting effects of smoking e-cigarette devices are unknown.[10]

33. In 2017, the United States Fire Administration characterized the "combination of an electronic cigarette and a lithium-ion battery" as a "new and unique hazard" because there is "no analogy among consumer products to the risk of a severe, acute injury presented by an e-cigarette."[11]

**The Injury**

34. On or about October 2017, Plaintiff purchased an e-cigarette and LG lithium-ion 18650 batteries from Foggy Bottom Vapez in Farmville, Virginia.

35. On or around October 29, 2018, Plaintiff was at the police station where he worked as an officer. He had two LG batteries loose in his pocket. Plaintiff was about to leave after a midnight shift when suddenly and without warning, the batteries exploded in his pocket.

36. Plaintiff was immediately transferred to the Emergency Room at Centra Southside Community Hospital where he was diagnosed with second- and third-degree burns. Plaintiff was subsequently transferred to the burn unit at VCU Medical Center where he was admitted.

37. Plaintiff's treating physicians proposed a skin graft as an option for treating his wound, but Plaintiff and his team of doctors opted for extensive wound care instead. Plaintiff underwent continuous, out-patient wound care for months while he missed work. During this time, Plaintiff had to monitor his mobility, attend to his wound, and was unable to work.

---

[1010] *See e.g.* National Academies of Sciences, Engineering, and Medicine, *Public Health Consequences of E-Cigarettes*, Washington, DC: The National Academies Press, 2018 (characterizing the use of e-cigarettes on public health as "unknown" and conclusively determining e-cigarette smokers are exposed to potentially toxic substances in addition to nicotine).

[11] McKenna, L., *Electronic Cigarette Fires and Explosions in the United States 2009-2016*, U.S. Fire administration, July 2017.

7

38. As a result of the battery explosion, Plaintiff sustained serious, permanent physical and emotional injuries.

## IV. CAUSES OF ACTION

### Count One – Strict Liability

39. Plaintiff incorporates the preceding paragraphs by reference as if fully stated herein.

40. At all times material to the allegations in this Complaint, Defendant LG Chem America was in the business of selling, distributing, importing, marketing, and/or otherwise placing lithium-ion 18650 batteries manufactured by its corporate parent, LG Korea, into the Georgia and United States streams of commerce.

41. At all times material to the allegations in this Complaint, Defendant LG Korea was in the business of manufacturing, distributing, exporting, designing, and/or otherwise placing lithium-ion 18650 batteries into the stream of commerce and did design, manufacture, market, and introduce the subject lithium-ion 18650 battery giving rise to this lawsuit into the stream of commerce.

42. Defendant LG Korea was a manufacturer within the meaning of the Ohio Product Liability Act, R.C. § 2307.71 et seq.; Defendant LG Chem America was a supplier within the meaning of the Ohio Product Liability Act, R.C. § 2307.71 et seq.

43. Defendant LG Korea is strictly liable to Plaintiff for the design, manufacturing, and warning defects in the subject lithium-ion 18650 battery because the lithium-ion battery was not merchantable or reasonably suited for its intended use when it was sold, as new, to Plaintiff. Additionally, the lithium-ion 18650 battery's defective condition when sold was the proximate cause of Plaintiff's injuries.

44. The subject battery was defective when it left LG Korea's control, as the designer and manufacturer of the product.

45. The subject battery and similar batteries defective nature is evidenced by the large number of burn cases currently pending before the LG Defendants both in Georgia and throughout the country.

46. The subject battery was placed into the stream of commerce without any labeling, markings, instructions, or warnings.

47. At the time the LG Defendants placed the subject battery into the stream of commerce, it knew or should have known that retailers and distributors and consumers such as Plaintiff were using 18650 batteries for use in personal vaping applications such as with the subject vaporizer.

48. At the time the LG Defendants placed the subject battery into the stream of commerce, it knew or should have known that its 18650 lithium-ion batteries were neither designed for use in vaping applications or safe for such use.

49. The LG Defendants never warned Plaintiff that the battery could explode or violently fail during its foreseeable and expected use.

50. The LG Defendants never warned Plaintiff that the subject battery was not designed to be used with e-cigarettes or personal vaping devices.

51. The LG Defendants never warned Plaintiff that the subject battery lacked critical safety components that are regularly incorporated into other, similar batteries.

52. At all relevant times, the LG Defendants either designed, manufactured, marketed, distributed, and/or sold 18650 lithium-ion rechargeable batteries with knowledge that

9

they were regularly purchased for and used as power sources for vaping devices that have no protection circuitry, battery management systems, PTCs and/or printed circuit boards.

53. The subject battery was unreasonably dangerous for a number of reasons, including but not limited to: it was designed and manufactured without any form of internal temperature control or protection circuitry; it contained manufacturing defects which rendered it unsafe for its foreseeable use; the material utilized to create the plastic insulation wrapper around the subject battery's terminal ends as designed and manufactured was of an inferior grade which created the propensity for an external short; it failed to incorporate protection circuitry or to integrate other safety devise to protect against overcurrent, overtemperature, short circuit, or overload; it contained inadequate warnings and otherwise failed to contain a warning sufficient to advise Plaintiff of those dangers; and it was designed and manufactured such that it failed to comply with generally accepted engineering safety standards for such lithium-ion batteries, particularly with respect to external- short testing.

54. The above described defects in the subject battery were the proximate cause of the Plaintiff's injuries and damages.

### Count Two – Negligence

55. Plaintiff incorporates the preceding paragraphs by reference as if fully stated herein.

56. The LG Defendants owed a duty to Plaintiff and other users of their products to exercise due care in the design, manufacture, distribution, marketing, testing, and /or sale of the subject battery.

57. The LG Defendants were negligent in one or more of the following ways, each of which was a proximate cause of Plaintiff's injuries and damages including:

a. Failing to employ that degree of care which is required of a reasonably prudent designer, manufacturer and seller in the design, manufacture, advertisement, marketing, distribution, sale, and placement into the stream of commerce of the subject battery;

b. Failing to conduct adequate safety testing and inspection of the subject battery in order to properly determine whether they were capable of performing their intended use; and

c. Failing to adequately instruct and/or warn the consumer and user, particularly Plaintiff, of the potential danger(s) posed by the subject battery, particularly in personal vaping devices;

d. Failing to protect against the dangerous consequences of battery failure during the normal and foreseeable use of these products

e. Failing to incorporate into the subject battery internal temperature controls and/ or protection circuitry.

f. Failing to incorporate feasible safety features available in similar products in the industry;

g. Placing a battery into the stream of commerce that failed to comply with generally accepted engineering safety standards applicable to lithium-ion batteries; and

h. Failing to adequately test the subject battery under conditions which the LG defendants should have anticipated its products would be used; and

i. Knowingly selling and distributing the subject battery for a use for which it was not designed.

58. The LG Defendants' negligence was the proximate cause of Plaintiff's injuries and damages.

### Count Three – Punitive Damages

59. Plaintiff incorporates the preceding paragraphs by reference as if fully stated herein.

60. As evidenced by the number of consumers severely injured by LG lithium-ion batteries, the LG defendants had actual knowledge that its products posed serious hazards and an unreasonable risk of harm to consumers, like Plaintiff. Despite being on notice of said dangers, the LG Defendants continued to sell its batteries to distributors it knew supplied the e-cigarette market in the United States. The LG Defendants consciously, willfully and wantonly failed to take steps to protect or warn the public, instead placing its dangerous products into the stream of commerce and continuing to garner significant profits.

61. The LG Defendants failure to act and failure to protect the safety of consumers and its prioritization of profits over consumer protection despite knowledge of the dangers its lithium-ion batteries posed demonstrates willful misconduct, malice, fraud, wantonness and oppression; rises to the level of conscious indifference for the safety of the public and shows such an entire want of care which raises the presumption of conscious indifference to the consequences. The LG Defendants' conduct was so reprehensible such that punitive damages are necessary and justified to deter the LG Defendants from repeating or continuing its unlawful and dangerous acts.

### V.   DAMAGES

62. Plaintiff incorporates the preceding paragraphs by reference as if fully stated herein.

63. As a direct and proximate result of the joint and combined tortious acts, negligence, tortious omissions, and breaches of warranty by Defendants set out herein, the Plaintiff sustained serious personal injuries, permanent impairment, and other damages.

64. Plaintiff is entitled to recover damages for his medical expenses incurred, past, and future; for his lost wages, past and future; for his permanent impairment, permanent scarring and loss of sensation; disability; diminished earning capacity, if any; physical, mental and emotional pain and suffering, past and future and for his other damages.

65. As Defendants are liable to Plaintiff under one or more of the alternative claims above, and because Defendants' combined and joint actions directly, concurrently, and proximately caused Plaintiff's injuries and Plaintiff's other damages, Plaintiff requests that he be awarded all damages that a jury deems just and equitable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for judgment as follows:

(a) That the Court issue service of process to Defendants as authorized by law;

(b) That Defendants Answer this Complaint as provided by law;

(c) That Plaintiff have a trial by jury;

(d) That Plaintiff recover from Defendants for all damages, economic and non-economic, tangible and intangible, general and special, as allowed by Georgia law and set forth above;

(e) That all costs be taxed against Defendants; and

(f) That the Court awards such other and further relief, as it shall deem just and appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 25, 2020

Respectfully Submitted,

David A. Sleppy
**Cathey & Strain, LLC**
P.O. Box 689
Cornelia, GA 30531
706-778-2601 (telephone)
706-776-2899 (facsimile)
DSleppy@catheyandstrain.com


Angela J. Nehmens (CA Bar No. 309433)
*To Be Admitted Pro Hac Vice*
**Levin Simes Abrams, LLP**
1700 Montgomery Street, Suite 250
San Francisco, CA 94111
Telephone: (415) 426-3000
Facsimile: (415) 426-3001
anehmens@levinsimes.com

***Attorneys for Plaintiff***